UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
S.W. on behalf of A.W.,                          :
                                Plaintiff,       :
                                                 :            22 Civ. 3592 (LGS)
                -against-                         :
                                                 :          OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF                       :
EDUCATION, et al.,                               :
                                                 :
                               Defendants.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

    Plaintiff brings this action pursuant to the fee-shifting provision of the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3), and Section 504 of the

Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, seeking attorneys' fees and costs

totaling $119,463.00 -- $80,554.50 for the underlying administrative action and $38,908.50 for

this civil action seeking attorneys' fees.  Defendants New York City Department of Education

("DOE") and David Banks oppose, arguing that Plaintiff's counsel billed excessive numbers of

hours at excessive rates.  Defendants do not dispute that Plaintiff is the "prevailing party"

entitled to recover under IDEA.  For the reasons below, Plaintiff's counsel is awarded

$78,486.05, consisting of (1) $53,678.05 in attorneys' fees for the administrative proceeding; (2)

$24,408 in attorneys' fees for this proceeding and (3) $400.00 in filing fees.

## I.      BACKGROUND

### A.      A.W.'s Educational Background

    Plaintiff is the parent of A.W., a child with a disability as defined under the IDEA.

During the fall of 2018, when A.W. was in the second grade, Plaintiff brought A.W. to the

Center for Attention and Learning at Lenox Hill Hospital for a neurological evaluation (the

"Evaluation").  The Evaluation determined that A.W. had not made meaningful progress in his

speech and language skills while attending a DOE school and receiving special education services beginning in pre-kindergarten.  The Evaluation found that A.W.'s overall cognitive performance was in the low-average range and diagnosed A.W. with Specific Learning Disorder with impairments in Reading, Written Expression and Mathematics.  The Evaluation recommended placement in a specialized learning setting and concluded that A.W. would need individualized academic intervention to make measurable progress.

After receiving the Evaluation, DOE held a meeting in the spring of 2019 to develop an Individualized Educational Program ("IEP") for A.W.  The IEP acknowledged that A.W. was not reading at grade level but nonetheless ignored the Evaluation's recommendations.  After the IEP meeting, DOE provided A.W. with the same program as the previous three years.  Plaintiff then unilaterally enrolled A.W. in the Sterling School ("Sterling"), a specialized non-public school serving students with disabilities, for the 2019-2020 school year.

    B.    **Administrative History**

As an initial matter, Defendants failed to comply with the Court's order regarding the briefing of this motion.  In an Order dated August 24, 2022, the parties were directed to file a joint statement of undisputed facts in lieu of separate Local Rule 56.1 statements that ordinarily would accompany motions for summary judgment.  Defendants failed to respond to Plaintiff's counsel's attempt to work jointly on a statement of undisputed facts.  Plaintiff unilaterally filed a statement of undisputed facts, which Defendants have not disputed.  The following facts are drawn from Plaintiff's statement of undisputed facts and from other undisputed facts recited in the parties' other submissions on the motion.

Prior to the spring of 2019 IEP meeting, Plaintiff contacted attorneys at Advocates for Children ("AFC"), an organization that provides special education advocacy services to children

with disabilities and their families.  AFC reached out to Morrison & Foerster ("MoFo"), a large

law firm that has served as co-counsel with AFC in the past.  MoFo agreed to represent Plaintiff

for the purpose of seeking reimbursement of A.W.'s tuition at Sterling and other services to

which A.W. may be entitled.

On February 10, 2020, Plaintiff, through her attorneys from MoFo and AFC, submitted to

DOE a due process complaint ("DPC"), seeking a due process hearing before an impartial

hearing officer ("IHO"), pursuant to section 1415(f)(1) of the IDEA and section 504 of the

Rehabilitation Act (the "2019-2020 DPC").  When a parent requests reimbursement of private

school tuition under the IDEA, an IHO must apply the three-step inquiry established in

*Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359 (1985), and *Florence Cnty. Sch.

Dist. Four v. Carter*, 510 U.S. 7 (1993): (i) whether the school district's proposed IEP and

placement constitute a free appropriate public education ("FAPE"); (ii) if not, whether the

parent's proposed private or non-public school placement is appropriate in light of the child's

needs and (iii) whether a balancing of the equities favors reimbursement.  New York law places

the burden of proof on the school district for prongs one and three, and on the parent for prong

two.  *See* N.Y. Educ. Law § 4404(1)(c).

In the 2020 DPC, Plaintiff asserted that the DOE had denied A.W. a FAPE for the 2017-

2018, 2018-2019 and 2019-2020 school years.  Plaintiff sought an order directing DOE to: (i)

fund A.W.'s $64,500 tuition at Sterling for the 2019-2020 school year; (ii) provide transportation

services to and from Sterling; (iii) provide 400 hours of compensatory tutoring services; (iv)

provide transportation to and from the requested tutoring services and (v) reimburse the cost of

school lunches for the 2019-2020 school year.

On August 24, 2020, an IHO conducted a due process hearing (the "2019-2020 Hearing").  At the 2019-2020 Hearing, DOE conceded, by not presenting a case, that it had denied A.W. a FAPE for the 2017-2018, 2018-2019, and 2019-2020 school years.  DOE did not give prior notice to Plaintiff that it would not present a case at the hearing.  Plaintiff's attorneys presented evidence on all three steps required to obtain reimbursement, including fourteen exhibits and three witnesses.  DOE briefly cross-examined two of the witnesses and did not offer a rebuttal case.  The hearing lasted about two hours.  On September 2, 2020, the IHO issued a Findings of Fact and Decision (the "2019-2020 FOFD"), finding that DOE had denied A.W. a FAPE for each of the school years in question and ordering all of the requested relief.  DOE did not appeal the 2019-2020 FOFD.

On September 14, 2020, Plaintiff, through counsel, filed a DPC for the 2020-2021 school year (the "2020-2021 DPC").  In the 2020-2021 DPC, Plaintiff sought an order from an IHO directing DOE to: (i) fund A.W.'s $68,500 tuition at Sterling for the 2020-2021 school year; (ii) provide transportation to and from Sterling on the days that A.W. attended school in person during the school year and (iii) reimburse Plaintiff for the days Plaintiff drove A.W. to Sterling before DOE busing was in place for that year.  On September 16, 2020, DOE sent Plaintiff's counsel a letter stating its willingness to settle the 2020-2021 claims and requesting certain documentation related to A.W.'s attendance at Sterling for the that year.  Plaintiff submitted the documents and followed up several times with DOE, but resolution was not reached before the 2021-2022 school year started.

On September 9, 2021, Plaintiff, through counsel, filed a DPC for the 2021-2022 school year (the "2021-2022 DPC") seeking an order directing DOE to: (i) fund A.W.'s $71,500 tuition at Sterling for the 2021-2022 school year; (ii) provide transportation in the form of door-to-door

busing to and from Sterling on the days that A.W. attended in person during the school year and (iii) provide transportation in the form of MetroCards or car service to and from Sterling on the days A.W. attended in person before busing was in place for that year.

On September 10, 2021, DOE appointed an IHO in connection with Plaintiff's 2020-2021 DPC.  On September 21, 2021, the IHO conducted a status conference regarding the 2020-2021 and 2021-2022 DPCs, and on September 30, 2021, the IHO consolidated the DPCs.  On October 7, 2021, the IHO conducted a status conference regarding the DPCs.  On October 15, 2021, the IHO conducted a hearing regarding the student's pendency placement pursuant to the IDEA.  At the conclusion of the pendency hearing, the IHO issued an Order, finding that A.W.'s placement during the pendency of the hearing was at Sterling.

On November 17, 2021, the IHO conducted a due process hearing to decide the claims and relief sought in the consolidated 2020-2021 and 2021-2022 DPCs (the "2020-2022 Hearing").  Plaintiff's counsel presented as evidence twenty documents and the testimony of two witnesses.  DOE did not contest the 2020-2022 Hearing.  On December 10, 2021, the IHO issued an FOFD (the "2020-2022 FOFD") finding that DOE had denied A.W. a FAPE for the 2020-2021 and 2021-2022 school years, and ordering DOE to fund A.W.'s tuition at Sterling for both years, provide transportation to and from Sterling and reimburse Plaintiff for the days she drove A.W. to Sterling before busing was in place at the beginning of the 2020-2021 school year.  DOE did not appeal the 2020-2022 IHO Decision.

C.    **Plaintiff's Fee Application**

Plaintiff seeks attorneys' fees for hours billed by eight individuals, four attorneys from MoFo and four from AFC.  The tables below summarize the rates and hours requested:

Table 1: Requested Attorneys' Fees for Administrative Proceedings

|  | Hours | Rate | Total |
|---|---|---|---|
| Carl H. Loewenson (MoFo) | 17.75 | $475 (2019-2020) | $8,431.25 |
|  | 14.00 | $500 (2021-2022) | $7,000.00 |
| Monica Chan (MoFo) | 55.25 | $300 (2019-2020) | $16,575.00 |
|  | 0.75 | $315 (2021-2022) | $236.25 |
| Casey S. Duffy (MoFo) | 29.25 | $350 (2021-2022) | $10,237.50 |
| Romi Paek (AFC) | 6.20 | $400 | $2,480.00 |
| Ariel Peters (AFC)[1] | 64.00 | $320 | $20,352.00 |
| Tayo Belle (AFC) | 6.30 | $290 | $1,827.00 |
| Total | 193.10 |  | $67,139.00 |

Table 2: Requested Attorneys' Fees for Federal Action

|  | Hours | Rate | Total |
|---|---|---|---|
| Carl H. Loewenson (MoFo) | 33.75 | $500 | $16,875.00 |
| Casey S. Duffy (MoFo) | 57.00 | $350 | $19,950.00 |
| Patricia Butler (MoFo) | 39.00 | $315 | $12,285.00 |
| Rebecca Shore (AFC) | 6.70 | $420 | $2,814.00 |
| Total | 136.45 |  | $51,924.00 |

The grand total of the amounts above and the $400 in filing fees that Plaintiff seeks to recover as costs is $119,463.00.

The parties' efforts to agree on a fee amount were unsuccessful.  Plaintiff now moves for summary judgment on its request for attorneys' fees, and Defendants oppose the motion.

## II.   LEGAL STANDARD

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability," based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(B)-(C).  To calculate a "presumptively reasonable fee," a district court first determines the appropriate billable hours expended and sets

---

[1] Of the 64 hours requested for Ariel Peters in connection with the administrative proceeding, Plaintiff seeks fees for 0.8 hours of travel time at half of Peters's normal hourly rate, or $160.

a "reasonable hourly rate." *Lilly v. City of New York*, 934 F.3d 222, 229-30 (2d Cir. 2019).[2]

"Such fees must be reasonable and based on rates prevailing in the community in which the

action or proceeding arose for the kind and quality of services furnished." *S.J. v. N.Y.C. Dep't of*

*Educ.*, No. 21-240-cv, 2022 WL 1409578, at *1 (2d Cir. May 4, 2022).  In determining an

appropriate hourly rate, a court should consider "all pertinent factors, including the *Johnson*

factors." *Lilly*, 934 F.3d at 230 (discussing *Johnson v. Ga. Hwy. Express Inc.*, 488 F.2d 714,

717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109

(1989)).  These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228.  "A district court need not recite and make separate findings as to all

twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee

award." *A.G. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 7577, 2021 WL 4896227, at *4 (S.D.N.Y.

Oct. 19, 2021).  In making this determination, a court should step "into the shoes of the

reasonable, paying client, who wishes to pay the least amount necessary to litigate the case

effectively." *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018).

However, "trial courts need not, and indeed should not, become green-eyeshade accountants.

The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."

*C.B. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 7337, 2019 WL 3162177, at *5 (S.D.N.Y. July 2,

---

[2] Unless otherwise indicated, in quoting cases, all internal quotations marks, alterations,
emphases, footnotes and citations are omitted.

2019).  "[A] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *M.D. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 2417, 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14, 2018).  "[T]he court may award fees for work on the fee application itself." *G.T. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 11262, 2020 WL 1516403, at *3 (S.D.N.Y. Feb. 12, 2020).

## III.   DISCUSSION

### A.   Billing Rates

#### 1.   General Considerations

The determination of a reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel, an inquiry that may include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012); *accord N.G.B. v. N.Y.C. Dep't of Educ.,* 2022 WL 800855 (S.D.N.Y. Mar. 16, 2022), at *3.  Plaintiff seeks an award of fees for work performed by eight attorneys -- four from MoFo and four from AFC.  For the MoFo attorneys, Plaintiff seeks fees based on hourly rates substantially lower than those MoFo customarily charges its paying clients. For the AFC attorneys, Plaintiff seeks fees based on the attorneys' actual hourly billing rates. Plaintiff contends that the rates sought are in line with prevailing rates in the community, based in part on declarations from other special education law practitioners.  Those declarations are of little value, if any, since they lack the context required to apply the *Johnson* factors to the facts of this case.  *See, e.g.*, *H.C. v. N.Y.C. Dep't of Educ.*, 2021 WL 2471195, at *4 n.5 (S.D.N.Y. June 17, 2021) (according similar declarations no weight and collecting cases).  Similarly, the fact that MoFo charges higher rates to different kinds of clients with very different legal needs does not

bear on the factors relevant to this decision.  MoFo's work on special education cases is laudable, but it is essentially pro bono work.  While MoFo's "stellar reputation . . . and its size and overhead costs" are relevant to the rates it commands in the market generally, a typical "reasonable, paying client" would not retain a large national law firm instead of a member of New York City's special education bar if the client were required to pay large law firm rates.  *Cf. D.B. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 7898, 2019 WL 6831506, at *4 (S.D.N.Y. Apr. 22, 2019), *report and recommendation adopted*, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019) (according greater weight to these factors).  Neither MoFo's commercial rates nor the rates referenced in the Cutler and DeCrescenzo declarations are credited as relevant benchmarks for reasonable rates in this case.

Turning to the facts of this case, the fact that the hearings were very brief and largely uncontested suggests that relatively low hourly rates are appropriate.  *See M.R. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5503, 2022 WL 4396835, at *3 (S.D.N.Y. Sept. 23, 2022) (rejecting a recommended fee award "in light of the relatively uncomplicated nature of the work involved in this case"), *modified on other grounds*, 2022 WL 16575767 (S.D.N.Y. Oct. 31, 2022); *S.J. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1922, 2021 WL 100501, at *4 (S.D.N.Y. Jan. 12, 2021) ("Here, success came in the context of an uncontested proceeding lasting less than two hours, regarding relatively straightforward issues.").  That the hearings were short and straightforward indicates that the issues were not particularly complex or novel, and Plaintiff does not suggest otherwise.  Without comment on the actual qualifications and skill of Plaintiff's lawyers, their prevailing in this litigation did not require particular skill.  A "reasonable, paying client" would not have paid top dollar for their representation. *O.R.*, 340 F. Supp. 3d at 364.

On the other hand, Plaintiff recovered essentially all of the relief sought, which is "the most critical factor" in setting the hourly rate. *See S.J.*, 2021 WL 100501, at *4 ("As Plaintiff correctly notes, the hourly rates should reflect that counsel secured the relief Plaintiff requested in the underlying administrative proceeding, which is the most critical factor when determining a fee award."). Defendants also delayed the underlying proceedings and caused Plaintiff's attorneys to bill additional time by, for example, assigning an IHO almost a year after Plaintiff submitted the 2020-2021 DPC, failing to respond to Plaintiff's submissions regarding settlement, and waiting to notify Plaintiff that Defendant would not contest certain parts of the hearings -- waiting until the 2019-2020 Hearing and until about ten days before the original date scheduled for the 2020-2022 Hearing. *See S.P. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 8380, 2022 WL 109266, at *5 (S.D.N.Y. Jan. 11, 2022) (noting where the DOE's own conduct caused plaintiff to expend potentially unnecessary time and effort, the award of a lower rate is not appropriate), *report and recommendation adopted*, No. 20 Civ. 8380, 2022 WL 484855 (S.D.N.Y. Feb. 16, 2022), *appeal docketed*, No. 22-1918-cv (2d Cir. Mar. 2, 2023).

None of the factors discussed above is dispositive, but are relevant, along with the other case-specific factors enumerated in *Johnson* and elsewhere, in determining the appropriate fee. *See, e.g.*, *Y.S. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 711, 2022 WL 3572935, at *6 (S.D.N.Y. Aug. 19, 2022) ("The Court has carefully considered the evidence submitted and all of the *Johnson* factors in its analysis for each timekeeper."), *appeal docketed*, No. 22-1914-cv (2d Cir. Sept. 1, 2022); *B.C. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2840, 2022 WL 3214374, at *7 (S.D.N.Y. Aug. 9, 2022) (setting rates "[a]fter reviewing [case-specific] materials, considering the *Johnson* factors, and looking to similar judicial decisions within this district"), *appeal docketed*, No. 22-1918-cv (2d Cir. Sept. 1, 2022); *see also Lilly*, 934 F.3d at 230 ("The district

court, in exercising its considerable discretion, should bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."). Taking account of all of those considerations, Plaintiff is awarded attorneys' fees based on rates lower than Plaintiff requests, but not as low as Defendants request.

### 2.    Carl H. Loewenson, Rebecca Shore and Romi Paek

Plaintiff seeks rates of $475 per hour for the work Mr. Loewenson performed in 2019 and 2020, and $500 per hour for his work performed in 2021 and 2022, as the most senior member of the MoFo team. Plaintiff seeks $420 per hour for the work performed by Ms. Shore and $400 per hour for Ms. Paek. Mr. Loewenson is a graduate of Yale Law School, and he has been a partner at MoFo for 30 years following a federal clerkship, a fellowship at the American Civil Liberties Union and several years as an Assistant U.S. Attorney in this District. Mr. Loewenson's practice focuses on white-collar defense and regulatory matters, but he has substantial prior experience in special education litigation. Ms. Shore is a graduate of George Washington Law School, and she has served as the Director of Litigation at Advocates for Children since 2008, following a federal clerkship and a stint as an associate in a large litigation firm. Ms. Shore has extensive experience in special education litigation of all kinds. Ms. Paek received her law degree from Oxford University in 2007, she was a staff attorney at AFC, and she has been an Assistant Director at AFC since 2015, where she manages AFC's representation of students with disabilities. Defendants argue that the requested rates exceed prevailing rates for IDEA cases at the administrative level, especially for attorneys like Mr. Loewenson who do not specialize in this area that Ms. Shore calls "highly specialized." Defendants contend that no senior attorney in this case should be awarded more than $360 per hour.

Mr. Loewenson's reasonable hourly rate is $425 for his work performed before December 31, 2020, and $450 for his work performed after January 1, 2021.  Ms. Shore's requested rate of $420 and Ms. Paek's requested rate of $400 are both reasonable.  These rates are in line with recent awards for highly experienced IDEA litigators in lightly contested administrative proceedings like these, adjusted for inflation.  *See, e.g.*, *M.D. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 9180, 2023 WL 2557408, at *4 (S.D.N.Y. Mar. 17, 2023) (adopting magistrate judge's recommendation of $425 per hour for experienced special education practitioner); *cf. D.B.*, 2019 WL 6831506, at *3-4 (awarding similar rates to several of the same counsel under similar circumstances four years ago, where the court relied on several additional factors favoring a higher fee on which this Court declines to rely, as discussed above).

The cases on which Plaintiff relies to support a higher hourly rate for Mr. Loewenson are distinguishable, as they involved attorneys with decades of experience specifically focused on civil rights litigation or special education litigation specifically.  *See G.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 435 (S.D.N.Y. 2012); *E.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243, 2014 WL 1092847, at *4 (S.D.N.Y. Mar. 17, 2014); *T.K. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 3964, 2012 WL 1107660, at *5 (S.D.N.Y. Mar. 30, 2012); *see also J.S. v. Carmel Cent. Sch. Dist.*, No. 10 Civ. 8021, 2011 WL 3251801, at *3 (S.D.N.Y. July 26, 2011), *aff'd*, 501 F. App'x 95 (2d Cir. 2012).

Defendants cite numerous cases awarding somewhat lower fees, decided between a few months to a few years ago.  Those cases are relevant to determining the prevailing market rate but do not alter the conclusion above.  Rates awarded under the IDEA have suffered significant inertia over the years, with rates barely increasing compared to the legal market at large and compared to the prices of all other goods and services.  *Compare M.R. v. N.Y.C. Dep't of Educ.*,

21 Civ. 5503, 2022 WL 16575767, at *2 (S.D.N.Y. Oct. 31, 2022) (awarding $367.50 to senior attorney), *with R.G. v. New York City Dep't of Educ.*, No. 18-CV-6851, 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019) ("The prevailing market rate for experienced, special-education attorneys in the New York area *circa 2018* is between $350 and $475 per hour.") (emphasis added).  A modest increase over those recent awards is still within the recognized range of prevailing market rates and is appropriate.  *See D.B.*, 2019 WL 6831506, at *3 (stating, in 2019, "Courts in this District generally have awarded between $300 and $475 per hour to senior or experienced attorneys").  Having considered the experience of the attorneys, the prevailing rates in this District and all the other case-specific variables, $425 is a reasonable rate for work performed by Mr. Loewenson prior to 2021 and $450 is reasonable for work performed in 2021 and later.

### 3.   Associates and Staff Attorneys

Plaintiff seeks the following hourly rates for MoFo associates: for Casey S. Duffy, $350 per hour; for Monica Chan, $300 for work performed in 2019 and 2020 and $315 for work performed in 2021 and after; and for Patricia Butler, $315, exclusively for work performed in 2022 and after.  Plaintiff seeks the following hourly rates for AFC staff attorneys: for Ariel Peters, $320 per hour; and for Tayo Belle, $290 per hour.

Ms. Chan was a fifth- and sixth-year associate when she worked as the primary associate on this case from 2019 until 2021 and did substantial work in connection with the 2019-2020 Hearing.  Ms. Chan is a graduate of the University of Chicago School of Law whose practice focuses on complex securities litigation and white-collar defense matters, as well as pro bono cases.  Ms. Chan has worked on one IDEA case in addition to this one.  Defendants argue that

Ms. Chan's hourly rate should not exceed $200 due to her limited experience specifically in IDEA cases.

Mr. Duffy was a seventh- and eighth-year associate when he worked on this case after taking over from Ms. Chan and performed substantial work on the 2020-2022 Hearing and on the initial stages of this case.  Mr. Duffy graduated from Cornell Law School and completed a federal clerkship.  His practice focuses on complex commercial litigation and white-collar defense, as well as pro bono cases.  Mr. Duffy has worked on one other IDEA case.  Defendants do not contest that the $350 per hour rate requested for Mr. Duffy is reasonable.

Ms. Butler was a fifth-year associate when she took over for Mr. Duffy on the federal case.  Ms. Butler is a graduate of Cardozo School of Law whose practice focuses on complex commercial and securities litigation, as well as pro bono cases.  Defendants do not dispute that the $315 per hour rate requested for Ms. Butler is reasonable.

Ms. Belle was a staff attorney at AFC from 2014 to 2018, and she was involved in the early stages of AFC's representation of Plaintiff.  Ms. Belle is a graduate of Northwestern School of Law.  She worked at the New York Civil Liberties Union advocating for students' rights prior to joining AFC.  Defendants assert that Ms. Belle's rate should not exceed $150 per hour because her work was mainly clerical in nature.  Defendants' assertion is belied by the billing records, which show that Ms. Belle spent her modest 6.3 hours on client intake and case evaluation.

Ms. Peters was a staff attorney at AFC from 2019 to 2022, and she was the primary AFC attorney on this case sharing responsibility with MoFo after taking over from Ms. Belle.  Ms. Peters is a graduate of the Georgetown University Law Center.  She previously worked for Defendants in the Special Education Office.  Defendants do not recommend a specific rate for

Ms. Peters, but contend that "rates for junior associates with six years' experience are typically between $125/hr. to $250/hr."

Contrary to Defendants' arguments, to the extent Defendants dispute Plaintiff's requests, the rates requested by Plaintiff are reasonable, except that Mr. Duffy's rate is reduced from $350 to $325.  Rates between $290 and $325 for mid-level to senior associates and their staff attorney counterparts in nonprofit legal organizations are in line with recent awards in similarly lightly contested cases, particularly when adjusted for inflation.  *See M.D. v. N.Y.C. Dep't of Educ.*, 2022 WL 19406557, at *6 (S.D.N.Y. Oct. 21, 2022) (awarding $325 per hour to attorneys Coretti and Mendillo of the Cuddy Law firm); *see also M.R. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5503, 2022 WL 4396835, at *2 (S.D.N.Y. Sept. 23, 2022) (noting that Coretti was admitted to the bar in 2013 and began working at the Cuddy Law Firm in 2015), *on reconsideration on other grounds*, No. 21 Civ. 5503, 2022 WL 16575767 (S.D.N.Y. Oct. 31, 2022); *P.R. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4887, 2018 WL 4328012, at *10 (S.D.N.Y. July 19, 2018) (recommending $300 per hour, five years ago, for a junior associate specializing in special education law and a mid-level associate with relatively less special education experience), *report and recommendation adopted*, No. 17 Civ. 4887, 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018); *R.G.*, 2019 WL 4735050, at *3 ($300 per hour for attorney with about seven years of IDEA litigation experience where the hearing was uncontested).

Defendants argue that rates for the MoFo attorneys should be lower because they have relatively little IDEA experience.  This argument is unavailing because those lawyers' considerable general litigation experience was valuable to their client.  *See P.R.*, 2018 WL 4328012, at *10 ("Although Brown has limited experience in special education law, the work he performed in this matter relates solely to the instant application for attorneys' fees and he has

five years of experience as a general practitioner."); *D.B.*, 2019 WL 6831506, at *5 (finding that a fourth-year MoFo associate's "skills as a litigator were directly translatable to her work on this matter"). Plaintiff seeks fees for MoFo's work on the underlying administrative proceeding as well as the fee application. Similar rates are appropriate for both phases because MoFo was well positioned to add value throughout. As Ms. Shore stated in her declaration, "AFC contributed its extensive knowledge of the IDEA, New York Education Law, and the practice of IDEA due process hearings in New York while Morrison & Foerster contributed its litigation expertise," and "AFC did not duplicate work performed by Morrison & Foerster."

The rates Plaintiff requests for the associates and staff attorneys above are not at the top of the prevailing inflation-adjusted range. These rates reflect the tradeoffs among the case-specific factors discussed above, including between Plaintiff's high degree of success on the one hand and the low complexity, on the other. Counsel's years of experience and numbers of IDEA cases provide no basis for further reducing the rates. Having considered the experience of the attorneys, the prevailing rates in this District and all the other case-specific variables, Plaintiff's requested rates for the associates and staff attorneys on the case are reasonable, with the exception of Mr. Duffy's rate, which is modestly adjusted to $325 per hour.

### B.    Hours Reasonably Expended

A fee award should compensate only those hours that were "reasonably expended" by the attorneys on this case. *See, e.g.*, *McDonald*, 450 F.3d at 96; *accord H.C*, 2021 WL 2471195, at *7. "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *accord H.C.*, 2021 WL 2471195, at *7. Mindful of both the fact that a court should step "into the shoes of the

reasonable, paying client" in making this determination, *O.R.*, 340 F. Supp. 3d at 364, and that a court not seek "auditing perfection" in evaluating a fee application, *C.B.*, 2019 WL 3162177, at *5, a modest percentage reduction in the hours sought will do "rough justice." *Id.* The appropriate reduction is different for hours expended on the administrative proceeding and on the federal fees litigation -- i.e., time billed on or before December 13, 2021 (MoFo's last billing entry pertaining to review of the IHO's decision) and on or after January 17, 2022 (MoFo's first billing entry pertaining to potential settlement of the fees aspect of the case). The billing records of AFC similarly indicate a shift to a new phase of the case. The 0.2 hours billed by Ms. Peters in 2022 are disregarded because the billing entries indicate that those hours were not spent on the fee application in this case.

### 1. Administrative Proceeding

Based on review of the billing records for the administrative proceeding, the hours worked by MoFo for which Plaintiff seeks recovery of attorneys' fees were reasonably expended. The hours worked by AFC are reduced by 20% to account for the "vagueness" of the billing records, which precludes meaningful review in order to identify excessive, redundant or otherwise deficient entries. *See Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022).

Defendants' various arguments that MoFo's hours should be reduced are unpersuasive. The case was not improperly staffed, since at all times MoFo staffed only Mr. Loewenson and one associate. It was not unreasonable for Mr. Loewenson to accompany the associate to the hearings. Defendants' assertion that MoFo's billing entries are vague is contradicted by the billing entries themselves. And MoFo has already trimmed almost half of the total hours from its bills before submitting the application, eliminating many of the entries that might have been questioned. Defendants' argument that Plaintiff should not recover for MoFo's fees prior to

filing the 2019-2020 DPC is unpersuasive because "Plaintiff's counsel may bill hours spent on 'preparation' of the due process complaint." *R.G.*, 2019 WL 4735050, at *4.  MoFo seeks compensation for less than three hours in the first month and a half of the representation, when it was gathering basic information about its client.  Thereafter, the billing entries shift to preparation of the 10-day notice letter, a procedural prerequisite to filing a DPC.  *See* 34 C.F.R. § 300.148(d)(1)(ii).

Defendants' argument that MoFo spent an excessive number of hours preparing for hearings is unavailing.  It is not clear exactly what Defendants put into this category of hearing preparation, but several of the cases they cite are distinguishable because they appear to deal with time spent on the immediate pre-hearing preparation process, not all of the advance work that goes into preparing witnesses and other evidence.  *See Rotella v. Bd. of Educ.*, No. 01 Civ. 0434, 2002 WL 59106, at *4 (E.D.N.Y. Jan. 17, 2002); *J.S.*, 2011 WL 3251801, at *6.  One of the other cases Defendants cite actually rejected the argument they makes now, for similar reasons.  *See C.B.*, 2019 WL 3162177, at *10.  Defendants' argument that Plaintiff need not have prepared so much evidence, because Defendants ultimately did not contest certain aspects of the case, is misplaced.  Defendants gave Plaintiff no notice that they planned not to contest the first *Burlington-Carter* prong prior to the first hearing.  Defendants' lack of resistance did not allow Plaintiff to conserve any attorney preparation time.  Defendants waited until less than two weeks before the second hearing was scheduled to give such notice, again likely waiting until after many of the hours were already reasonable expended.  Defendants do not identify any task related to hearing preparation that Plaintiff's counsel should not have performed or should have performed in less time.  Defendants' argument that all or most of the billing entries should be

lumped together and divided by the length of the hearings is unsupported by either the evidence or case law.

The billing entries by AFC are situated differently. An across-the-board reduction in the hours billed by AFC attorneys is appropriate.  First, AFC began billing in July 2018, more than a year and a half before the first DPC was filed, and about ten months before the first entry concerning the 10-day notice.  While some of the entries appear to relate to "communications with Plaintiff and review of school records that would be relevant to the complaint," many other time entries relate to AFC's efforts to search for a new school for A.W., which is too distinct in both time and substance to constitute "preparation of the complaint" or any other matter sufficiently related to proceeding under § 1415.  *R.G.*, 2019 WL 4735050, at *4.  As a matter of "rough justice," none of the time billed prior to May 9, 2019, when AFC apparently first reached out to MoFo about filing the 2019-2020 DPC, is included in the award of attorneys' fees.  This eliminates all hours billed by Ms. Belle and Ms. Paek and 11 hours billed by Ms. Peters (including the 0.8 hours of travel time Ms. Peters billed).

Second, a substantial proportion of AFC's billing entries are vague.  Those labeled "Scheduling" or simply "Evaluation" coupled with "Next Steps" or "Case Goals" are not susceptible to effective review to determine whether they represent clerical work that should have been done by a paralegal or administrative staff, or whether they are duplicative or excessive.  The remaining billed time is reduced by 20% to account for this deficiency.

### 2.      Federal Court Litigation

Plaintiff requests attorneys' fees for 136.45 hours of work in this proceeding.  This action is limited to the narrow issue of the reasonable amount of fees and costs that Plaintiff's attorneys should be paid for prevailing on behalf of Plaintiff in two minimally contested proceedings.  The

Court has recently approved reductions of twenty to fifty percent to hours dedicated to federal IDEA fees litigation, approving recovery of roughly twenty-five to sixty hours.  *See S.J.*, 2021 WL 100501, at *5 (adopting recommendation to reduce hours expended on federal litigation by 50%, from 112 hours to 56 hours); *N.L. v. N.Y.C. Dep't of Educ.*, 2023 WL 2523636, at *7 (S.D.N.Y. Mar. 15, 2023) (adopting 20% reduction, from 60.5 attorney hours to 48.4); *M.D.*, 2023 WL 2557408, at *6 (adopting 40% reduction, from roughly 43 attorney hours to 26).  Even assuming that this fee litigation was marginally more complex than some others -- due to the multiple underlying administrative hearings covering several years and the reasonable involvement of both MoFo and AFC -- a similar 50% reduction will bring the hours sought on the federal litigation in line with what has proven reasonable in many other cases in this District.

### C.    Defendants' Settlement Offers

In light of the above, Plaintiff legitimately sought $54,568.68 in attorneys' fees as of April 11, 2022, substantially more than the DOE's $28,000 settlement offer made the following day.  Plaintiff legitimately sought $59,379.55 in attorneys' fees as of August 15, 2022, again exceeding the DOE's offer of $53,800 the following day.  Under the IDEA, a plaintiff may not recover fees or costs for services performed subsequent to the time of a written offer of settlement that exceeds the relief awarded.  *See* 20 U.S.C. § 1415(i)(3)(D)(iii) (stating that a court may not award fees for services performed "subsequent to the time of a written offer of settlement . . . [if] the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement").  Because Plaintiffs' final award of fees and costs as of June 15, 2022, exceeds the settlement offer, this provision does not apply, and Plaintiffs' recovery is not capped.

### D.     Summary

#### 1.     Attorneys' Fees

Below is a summary of reasonable attorneys' fees awarded:

Table 3: Attorneys' Fees Awarded for Administrative Proceedings

|  | Hours | Rate | Total |
|---|---|---|---|
| Carl H. Loewenson (MoFo) | 17.75 | $425 (2019-2020) | $7,543.75 |
|  | 14.00 | $450 (2021-2022) | $6,300.00 |
| Monica Chan (MoFo) | 55.25 | $300 (2019-2020) | $16,575.00 |
|  | 0.75 | $315 (2021-2022) | $236.25 |
| Casey S. Duffy (MoFo) | 29.25 | $325 | $9,506.25 |
| Ariel Peters (AFC)[3] | 42.24 | $320 | $13,516.80 |
| Total | 159.24 |  | $53,678.05 |

Table 4: Attorneys' Fees Awarded for Federal Action

|  | Hours | Rate | Total |
|---|---|---|---|
| Carl H. Loewenson (MoFo) | 16.88 | $450 | $7.596.00 |
| Casey S. Duffy (MoFo) | 28.50 | $325 | $9,262.50 |
| Patricia Butler (MoFo) | 19.50 | $315 | $6,142.50 |
| Rebecca Shore (AFC) | 3.35 | $420 | $1,407.00 |
| Total | 68.23 |  | $24,408.00 |

#### 2.     Costs

"A district court may award reasonable costs to the prevailing party in IDEA cases."

*C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *12 (S.D.N.Y. Aug. 9, 2018)

(citing 20 U.S.C. § 1415(i)(3)(B)(i)(1)).  Plaintiff seeks reimbursement of the federal court filing

fee.  Plaintiff seeks reimbursement of $400 of the actual $402 filing fee.  Plaintiff is awarded

$400 in costs as this request is uncontested.

---

[3] Of the 64 hours requested for Ariel Peters in connection with the administrative proceeding, Plaintiff seeks fees for 0.8 hours of travel time at half of Peters's normal hourly rate, or $160.

### 3.  Post-Judgment Interest

Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017); *accord S.J..,* 2021 WL 100501, at *5. Plaintiff's request for an award of post-judgment interest, from the date judgment is entered until the date it is paid, is granted.

### E.  Motion to Seal Administrative Record

Plaintiff's motion to maintain under seal the administrative record (the "Record") filed in this case is granted.  Although "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history," this right is not absolute, and courts "must balance competing considerations against" the presumption of access.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *see also Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 599 (1978) ("[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.").  Here, the presumption of public access is not particularly strong, and the strong countervailing privacy interests support sealing.

The Record contains identifying information about the minor student, A.W., as well as confidential health information and other private details.  Plaintiff has a compelling interest in maintaining the confidentiality of such information about her minor child.  It can be assumed that the Record is a "judicial document" to which the presumption of public access applies, because it is at least minimally "relevant to the performance of the judicial function and useful in the judicial process." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020).  The weight of that

presumption is low, however, given "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* The minute details of the administrative proceedings below generally play little role in the determination of reasonable attorneys' fees, while the relevant information about the proceedings -- such as their length, complexity and procedural history -- is recited in publicly filed memoranda of law and affidavits. The privacy interests of Plaintiff and A.W. outweigh that presumption of public access. Filing the entire Record under seal is narrowly tailored to protect those privacy interests, given that the Record is voluminous and permeated with confidential information. Redacting the Record would be unduly burdensome in the context of an application for attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff is awarded $78,486.05 consisting of (1) $53,678.05 in attorneys' fees for the administrative proceeding before Defendants; (2) $24,408.00 in attorneys' fees for this proceeding and (3) $400.00 in costs. Plaintiff is awarded post-judgment interest on this amount, calculated at the applicable statutory rate. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 29 and 52.

Dated: September 7, 2023
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE